## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

**JONATHAN BROADHURST**, on behalf of
himself and all others similarly situated,

                Plaintiff,

v.

**KWS MANUFACTURING COMPANY,
LLC**,

                Defendant.

Case No.: 3:25-cv-01003

**DEMAND FOR JURY TRIAL**

## CLASS ACTION COMPLAINT

Jonathan Broadhurt ("Plaintiff"), through his attorneys, individually and on behalf of all others similarly situated, brings this Class Action Complaint against Defendant KWS Manufacturing Company, LLC ("KWS" or "Defendant"), and its present, former, or future direct and indirect parent companies, subsidiaries, affiliates, agents, and/or other related entities. Plaintiff alleges the following on information and belief—except as to his own actions, counsel's investigations, and facts of public record.

### NATURE OF ACTION

1.      This class action arises from Defendant's failure to protect highly sensitive data.

2.      Defendant is a Burleson, Texas based manufacturer of conveyors and component parts for the bulk material handling industry.[1] It operates a 125,000 square foot facility and markets to a a large customer base around the world.[2]

---

[1] *About KWS*, KWS, https://www.kwsmfg.com/about/ (last visited Apr. 22, 2025).
[2] *Id.*

3.      As such, Defendant stores a litany of highly sensitive personal identifiable information ("PII") and protected health information ("PHI") (collectively "Sensitive Information") about its current and former employees. But Defendant lost control over that data when cybercriminals infiltrated its insufficiently protected computer systems in a data breach (the "Data Breach").

4.      It is unknown for precisely how long the cybercriminals had access to Defendant's network before the breach was discovered. In other words, Defendant had no effective means to prevent, detect, stop, or mitigate breaches of its systems—thereby allowing cybercriminals unrestricted access to its current and former employees' Sensitive Information.

5.      On information and belief, cybercriminals were able to breach Defendant's systems because Defendant failed to adequately train its employees on cybersecurity and failed to maintain reasonable security safeguards or protocols to protect the Class's Sensitive Information. In short, Defendant's failures placed the Class's Sensitive Information in a vulnerable position—rendering them easy targets for cybercriminals.

6.      Plaintiff is a Data Breach victim, having received a breach notice—attached as Exhibit A. He brings this class action on behalf of himself, and all others harmed by Defendant's misconduct.

7.      The exposure of one's Sensitive Information to cybercriminals is a bell that cannot be unrung. Before this data breach, its current and former employees' private information was exactly that—private. Not anymore. Now, their private information is forever exposed and unsecure.

**PARTIES**

8.      Plaintiff, Jonathan Broadhurst, is a natural person and citizen of Venus, Texas, where he intends to remain.

9.    Defendant, KWS Manufacturing Company, LLC, is a Texas limited liability company with its principal place of business at 3041 Conveyor Drive, Burleson, Texas 76028. The registered agent for service of process is Corporation Service Company d/b/a CSC-Lawyers Incorporating Service Company, 211 E. 7th Street, Suite 620, Austin, Texas 78701.

## JURISDICTION & VENUE

10.    This Court has subject matter jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2). The amount in controversy exceeds $5 million, exclusive of interest and costs. There are over 100 putative Class Members. Defendant is a citizen of Texas.

11.    Many states, including Maine, have statutes requiring companies to report data breaches to the relevant state's attorney general's office. *See* M.R.S. § 1348.

12.    Pursuant to M.R.S. § 1348, Defendant submitted a sample letter and submitted other information about the Data Breach to the Maine Attorney General's Office, which is publicly available[3] and attached hereto as **Exhibit A**. Defendant reported that 1 Maine resident was affected by the Data Breach.[4]

13.    Because Defendant has publically reported the existence of at least 1 member of the proposed class in Maine, Plaintiff has satisfied the minimal jurisdictional requirements set forth in 28 U.S.C. § 1332(d)(2) in that there is a member of the putative class in a foreign state different from Defendant.

14.    This Court has personal jurisdiction over Defendant because it is headquartered and its principal place of business is located in the Dallas Division of the Northern District of Texas, regularly conducts business in Texas, and has sufficient minimum contacts in Texas.

---

[3] *Data Breach Notification*, OFFICE OF THE MAINE ATTORNEY GENERAL, https://www.maine.gov/agviewer/content/ag/985235c7-cb95-4be2-8792-a1252b4f8318/342d0134-8941-4641-aa87-75b468bc6415.html (last visited Apr. 14, 2025).
[4] *Id.*

15. Venue is proper in the Dallas Division of the Northern District of Texas because Defendant's principal office is in this District, and because a substantial part of the events, acts, and omissions giving rise to Plaintiff's claims occurred in this District.

## FACTUAL ALLEGATIONS

### *KWS Manufacturing, LLC*

16. KWS states it is a leader in the design and manufacture of conveying equipment for the bulk material handling industry.[5] KWS boasts that it operates a 125,000 square foot facility with extensive capabilities, including a machine shop and steel fabrication.[6]

17. On information and belief, KWS accumulates highly private Sensitive Information of its current and former employees.

18. In collecting and maintaining its employees' Sensitive Information, Defendant agreed it would safeguard the data in accordance with state law and federal law. After all, Plaintiff and Class Members themselves took reasonable steps to secure their Sensitive Information.

19. KWS understood the need to protect its current and former employees' Sensitive Information and prioritize its data security, declaring in its Privacy Policy:

    a. "[a]t KWS Mfg, we take your privacy seriously;"

    b. "[w]e work hard to protect KWS Mfg and our users from unauthorized access to or unauthorized alteration, disclosure, or destruction of information we hold…"

    c. "[w]e use encryption to keep your data private while in transit;"

    d. "[w]e review our information collection, storage, and processing practices,

---

[5] *About KWS*, KWS, https://www.kwsmfg.com/about/ (last visited Apr. 22, 2025).
[6] *KWS Manufacturing Capabilities*, KWS, https://www.kwsmfg.com/about/manufacturing-capabilities/ (last visited Apr. 22, 2025).

including physical security measures, to prevent unauthorized access to our systems'"

e. "[w]e restrict access to personal information to KWS Mfg employees, contractors, and agents who need to know that information to process it for us, and who are subject to strict contractual confidentiality obligations and may be disciplined or terminated if they fail to meet these obligations."[7]

20.     Despite recognizing its duty to do so, on information and belief, KWS has not implemented reasonably cybersecurity safeguards or policies to protect employees' Sensitive Information or trained its IT or data security employees to prevent, detect, and stop breaches of its systems. As a result, KWS leaves significant vulnerabilities in its systems for cybercriminals to exploit and gain access to employees' Sensitive Information.

***The Data Breach***

21.     Plaintiff is a former employee of KWS.

22.     As a condition of employment with KWS, Plaintiff provided Defendant with his Sensitive Information. Defendant used that Sensitive Information to facilitate its employment of Plaintiff, including payroll, and required Plaintiff to provide that Sensitive Information to obtain employment and payment for that employment.

23.     On information and belief, KWS collects and maintains employees' unencrypted Sensitive Information in its computer systems.

24.     In collecting and maintaining Sensitive Information, Defendant implicitly agreed that it will safeguard the data using reasonable means according to its internal policy as well as state and federal law.

---

[7] *Privacy Policy*, KWS, https://www.kwsmfg.com/privacy-policy/ (last visited Apr. 22, 2025).

25.     According to the Breach Notice, KWS admits that it "learned of suspicious activity in our computer environment" and conducted an investigation which revealed that "an unauthorized third party accessed our computer systems during the period of January 24-25, 2025, and obtained some company files." Ex. A.

26.     In other words, the Data Breach investigation revealed Defendant's cyber and data security systems were completely inadequate and allowed cybercriminals to obtain files containing a treasure trove of hundreds of its employees' highly private information.

27.     Due to the obfuscating language in KWS' Breach Notice, it is unknown how long hackers had access to Defendant's computer systems or when KWS learned of the Data Breach.

28.     KWS reported to the Maine Attorney General's Office that 1466 individuals were affected by the Data Breach.[8] KWS reported to the Attorney Geneal of Texas that 1344 Texans were affected by the Data Breach.[9]

29.     Through its inadequate security practices, Defendant exposed Plaintiff's and the Class's Sensitive Information for theft and sale on the dark web.

30.     Indeed, various cybersecurity firms that track dark web activity reported that the notorious Play ransomware gang claimed responsibility for the Data Breach.[10, 11]

31.     Play is a prolific ransomware actor that has been active since 2022.[12] The group is known for attacking small and medium sized organizations and employing a "double-extortion"

---

[8] *Data Breach Notifications*, OFFICE OF THE MAINE ATTORNEY GENERAL, https://www.maine.gov/agviewer/content/ag/985235c7-cb95-4be2-8792-a1252b4f8318/48351536-4c70-4b0f-8840-f78ed1955330.html (last visited Apr. 22, 2025).
[9] *Data Security Breach Reports*, ATTORNEY GENERAL OF TEXAS, https://oag.my.site.com/datasecuritybreachreport/apex/DataSecurityReportsPage (last visited Apr. 22, 2025).
[10] *HACK TUESDAY (WEEK 29 JAN - 04 FEB 2025)*, HACKMANAC, https://hackmanac.com/news/hack-tuesday-week-29-jan-04-feb-2025 (last visited Apr. 22, 2025).
[11] *KWS*, BREACHSENSE, https://www.breachsense.com/breaches/kws-data-breach/ (last visited Apr. 22, 2025).
[12] Miklos Zoltan, *PLAY Ransomware Breaches 8 Targets Across the US and New Mexico*, PRIVACY AFFAIRS (Apr. 28, 2024), https://www.privacyaffairs.com/play-ransomware-breaches-8-targets-across-the-us-and-mexico/ .

tactic.13

32.    According to the cybersecurity firm CYBLE14, the Play ransomware group "exploits vulnerabilities to infiltrate systems, encrypts data, and exfiltrates sensitive information to extort ransom payments."15

33.    On February 3, 2025, Play published a post on its dark web website16 indicating that it had KWS' Sensitive Information and would publish the data on February 8, 2025.17



34.    Since the February 8, 2025 deadline has long since passed, on information and belief, Plaintiff's and Class Members' Sensitive Information has already been published on the dark web.

35.    Moreover, even if KWS made a ransom payment, there is no guarantee that the data

<hr/>

13 *Id.*
14 *See Home Page*, CYBLE, https://cyble.com/ (last visited Apr. 22, 2025).
15 *Threat Actor Profile: Play Ransomware Group*, CYBLE (Feb. 27, 2025), https://cyble.com/threat-actor-profiles/play-ransomware-group/.
16 The screen shot regarding the dark web post related to the Data Breach was obtained from Falcon Feeds, a firm providing cybersecurity and dark web and ransomware monitoring services. See *Home Page*, FALCON FEEDS, https://falconfeeds.io/ (last visited Apr. 22, 2025).
17 Falcon Feeds, (@falconfeedsio) X, (Feb. 3, 2025, 5:47 PM), https://x.com/FalconFeedsio/status/1886562166733451616.

Play stole will be deleted.[18] The stolen Sensitive Information is valuable, and can easily be sold to another threat actor, so there is little incentive to delete it.[19]

36.    Further, there have been cases where the links that lead to compromised files, while removed from the group who received the ransom payment's dark web website, remain available on the servers used by other hackers, even after the demand is met.[20]

37.    Cybercriminal groups can monetize stolen Sensitive Information and sell it on the dark web as part of a full identity profile.[21] Buyers can then use that information to conduct different types of identity theft or fraud, such as filing a fake tax return, applying for a fraudulent mortgage or opening a bank account while impersonating the victim.[22]

38.    To date, on information and belief, Defendant has not notified Plaintiff and Class Members about the theft of their Sensitive Information by the Play ransomware group, leaving them vulnerable to identity theft and fraud.

39.    As a result, Plaintiff's and Class Members' ability to mitigate the harms resulting from the Data Breach is severely impaired.

40.    On or around April, 15, 2025–more than three months after the Data Breach occurred– Defendant finally began notifying Class Members about the Data Breach.

41.    Despite its duties to safeguard Sensitive Information, Defendant did not in fact follow industry standard practices in securing employees' Sensitive Information, as evidenced by

---

[18] Steve Adler, *Majority of Ransomware Victims That Pay a Ransom Suffer a Second Attack*, THE HIPAA JOURNAL (Feb. 23, 2024), https://www.hipaajournal.com/majority-of-ransomware-victims-that-pay-a-ransom-suffer-a-second-attack/.
[19] *Id*.
[20] *Dedicated Leak Sites (DLS): Here's what you should know*, Group-IB, https://www.group-ib.com/resources/knowledge-hub/dedicated-leak-sites/ (last visited Apr. 22, 2025).
[21] Anthony M. Freed, *Which Data Do Ransomware Attackers Target for Double Extortion?*, MALICIOUSLIFE BY CYBEREASON, https://www.cybereason.com/blog/which-data-do-ransomware-attackers-target-for-double-extortion (listed visited Mar. 6, 2025).
[22] *Id*.

the Data Breach.

42.    In response to the Data Breach, Defendant contends that it is continuing to "review enhance our security measures and protocols in light of this incident to help reduce the risk of a similar event occurring in the future." Ex. A. Though Defendant fails to expand on what these "enhancements" are, they should have been in place before the Data Breach.

43.    Through its Breach Notice, Defendant recognized the actual imminent harm and injury that flowed from the Data Breach, so it encouraged breach victims to "remain vigilant and take steps to protect against identity theft or fraud, including monitoring your accounts and free credit reports for signs of suspicious activity." Ex. A

44.    While KWS has offered 12 months of complimentary credit monitoring services to victims,[23] this does not adequately address the lifelong harm that victims will face following the Data Breach. Indeed, the breach involves Sensitive Information that cannot be changed, such as Social Security numbers.

45.    Even with 12 months of credit monitoring services, the risk of identity theft and unauthorized use of Plaintiff's and Class Members' Sensitive Information is still substantially high. The fraudulent activity resulting from the Data Breach may not come to light for years.

46.    Cybercriminals need not harvest a person's Social Security number or financial account information in order to commit identity fraud or misuse Plaintiff's and the Class's Sensitive Information. Cybercriminals can cross-reference the data stolen from the Data Breach and combine with other sources to create "Fullz" packages, which can then be used to commit fraudulent account activity on Plaintiff's and the Class's financial accounts.

47.    On information and belief, KWS failed to adequately train its IT and data security

---

[23] *See* Ex. A.

employees on reasonable cybersecurity protocols or implement reasonable security measures, causing it to lose control over its employees' Sensitive Information. Defendant's negligence is evidenced by its failure to prevent the Data Breach and stop cybercriminals from accessing the Sensitive Information.

***The Data Breach was a Foreseeable Risk of Which Defendant was on Notice.***

48.    It is well known that Sensitive Information, including Social Security numbers, is an invaluable commodity and a frequent target of hackers.

49.    In 2021, there were a record 1,862 data breaches, surpassing both 2020's total of 1,108 and the previous record of 1,506 set in 2017.[24]

50.    In light of recent high profile data breaches, including, Microsoft (250 million records, December 2019), Wattpad (268 million records, June 2020), Facebook (267 million users, April 2020), Estee Lauder (440 million records, January 2020), Whisper (900 million records, March 2020), and Advanced Info Service (8.3 billion records, May 2020), Defendant knew or should have known that its electronic records would be targeted by cybercriminals.

51.    Indeed, cyberattacks have become so notorious that the FBI and U.S. Secret Service have issued a warning to potential targets, so they are aware of and take appropriate measures to prepare for and are able to thwart such an attack.

52.    Despite the prevalence of public announcements of data breach and data security compromises, and despite its own acknowledgments of data security compromises, and despite its own acknowledgment of its duties to keep Sensitive Information private and secure, Defendant failed to take appropriate steps to protect the Sensitive Information of Plaintiff and Class Members from being compromised.

---

[24] Bree Fowler, *Data breaches break record in 2021*, CNET (Jan. 24, 2022), https://www.cnet.com/news/privacy/record-number-of-data-breaches-reported-in-2021-new-report-says/.

53.    In the years immediately preceding the Data Breach, Defendant knew or should have known that Defendant's computer systems were a target for cybersecurity attacks, including ransomware attacks involving data theft, because warnings were readily available and accessible via the internet.

54.    In October 2019, the Federal Bureau of Investigation published online an article titled "High-Impact Ransomware Attacks Threaten U.S. Businesses and Organizations" that, among other things, warned that "[a]lthough state and local governments have been particularly visible targets for ransomware attacks, ransomware actors have also targeted health care organizations, industrial companies, and the transportation sector."[25]

55.    In April 2020, ZDNet reported, in an article titled "Ransomware mentioned in 1,000+ SEC filings over the past year," that "[r]ansomware gangs are now ferociously aggressive in their pursuit of big companies. They breach networks, use specialized tools to maximize damage, leak corporate information on dark web portals, and even tip journalists to generate negative news for companies as revenge against those who refuse to pay."[26]

56.    In September 2020, the United States Cybersecurity and Infrastructure Security Agency published online a "Ransomware Guide" advising that "[m]alicious actors have adjusted their ransomware tactics over time to include pressuring victims for payment by threatening to release stolen data if they refuse to pay and publicly naming and shaming victims as secondary forms of extortion."[27]

57.    This readily available and accessible information confirms that, prior to the Data

---

[25] *High-Impact Ransomware Attacks Threaten U.S. Businesses and Organizations*, FBI (Oct. 2, 2019), https://www.ic3.gov/Media/Y2019/PSA191002.
[26] Catalin Cimpanu, *Ransomware mentioned in 1,000+ SEC filings over the past year*, ZDNET (Apr. 30, 2020), https://www.zdnet.com/article/ransomware-mentioned-in-1000-sec-filings-over-the-past-year/.
[27] *#StopRansomware Guide*, U.S. CISA, https://www.cisa.gov/stopransomware/ransomware-guide (last visited Feb. 5, 2025).

Breach, Defendant knew or should have known that (i) ransomware actors were targeting entities such as Defendant, (ii) ransomware gangs were ferociously aggressive in their pursuit of entities such as Defendant, (iii) ransomware gangs were leaking corporate information on dark web portals, and (iv) ransomware tactics included threatening to release stolen data.

58.    In light of the information readily available and accessible on the internet before the Data Breach, Defendant, having elected to store the unencrypted Sensitive Information of thousands of its current and former employes in an Internet-accessible environment, had reason to be on guard for the exfiltration of the Sensitive Information and Defendant's type of business had cause to be particularly on guard against such an attack.

59.    Before the Data Breach, Defendant knew or should have known that there was a foreseeable risk that Plaintiff's and Class Members' Sensitive Information could be accessed, exfiltrated, and published as the result of a cyberattack. Notably, data breaches are prevalent in today's society therefore making the risk of experiencing a data breach entirely foreseeable to Defendant.

60.    Prior to the Data Breach, Defendant knew or should have known that it should have encrypted its employees' Social Security numbers and other sensitive data elements within the Sensitive Information to protect against their publication and misuse in the event of a cyberattack.

***Plaintiff's Experience and Injuries***

61.    Plaintiff is a former employee of Defendant and a data breach victim.

62.    As a condition of employment with KWS, Plaintiff provided Defendant with his Sensitive Information. Defendant used that Sensitive Information to facilitate its employment of Plaintiff, including payroll, and required Plaintiff to provide that Sensitive Information to obtain employment and payment for that employment.

63.    Plaintiff provided his Sensitive Information to Defendant and trusted that the company would use reasonable measures to protect it according to its internal policy as well as state and federal law.

64.    Plaintiff received a Notice of Data Breach in or around April 2025.

65.    Thus, on information and belief, Plaintiff's Sensitive Information has already been published—or will be published imminently—by cybercriminals on the dark web, specifically, the Play ransomware gang.

66.    Defendant deprived Plaintiff of the earliest opportunity to guard himself against the Data Breach's effects by failing to notify him about the Breach promptly.

67.    As a result of its inadequate cybersecurity, Defendant exposed Plaintiff's Sensitive Information for theft by cybercriminals and sale on the dark web.

68.    Plaintiff suffered actual injury from the exposure of his Sensitive Information— which violates his rights to privacy.

69.    Plaintiff suffered actual injury in the form of damages to and diminution in the value of his Sensitive Information. After all, Sensitive Information is a form of intangible property—property that Defendant was required to adequately protect.

70.    As a result of the Data Breach, Plaintiff has spent time and made reasonable efforts to mitigate the impact of the Data Breach, including but not limited to researching the Data Breach, reviewing credit card and financial account statements, changing his online account passwords, placing a credit freeze through all the three main credit bureaus, and monitoring Plaintiff's credit information.

71.    Plaintiff has already spent and will continue to spend considerable time and effort monitoring his accounts to protect himself from identity theft. Plaintiff fears for his personal

financial security and uncertainty over what Sensitive Information was exposed in the Data Breach. Plaintiff has and is experiencing feelings of anxiety, sleep disruption, stress, fear, and frustration because of the Data Breach. Plaintiff is experiencing anxiety, distress, and fear regarding how this Data Breach, including the exposure and loss of his Social Security number, will impact his ability to do so. This goes far beyond allegations of mere worry or inconvenience; it is exactly the sort of injury and harm to a Data Breach victim that the law contemplates and addresses.

72.    Plaintiff is now subject to the present and continuing risk of fraud, identity theft, and misuse resulting from his Sensitive Information being placed in the hands of unauthorized third parties. This injury was worsened by Defendant's failure to inform Plaintiff about the Data Breach in a timely fashion.

73.    Indeed, shortly after the Data Breach, Plaintiff began receiving numerous spam texts, suggesting that his Sensitive Information is now in the hands of cybercriminals. On information and belief, Plaintiff's phone number was stolen by Play in the Data Breach.

74.    Moreover, once an individual's Sensitive Information is for sale and access on the dark web, as Plaintiff's Sensitive Information is here as a result of the Data Breach, cybercriminals are able to use the stolen and compromised to gather and steal even more information.[28] On information and belief, Plaintiff's phone number was compromised as a result of the Data Breach.

75.    Plaintiff has a continuing interest in ensuring that his Sensitive Information, which, upon information and belief, remains backed up in Defendant's possession, is protected and safeguarded from future breaches.

76.    Plaintiff and the Proposed Class Face Significant Risk of Continued Identity Theft

---

[28] Ryan Toohil, *What Do Hackers do with Stolen Information?*, AURA (Sept. 5, 2023), https://www.aura.com/learn/what-do-hackers-do-with-stolen-information.

77.     Plaintiff and members of the proposed Class have suffered injury from the misuse of their Sensitive Information that can be directly traced to Defendant.

78.     As a result of Defendant's failure to prevent the Data Breach, Plaintiff and the proposed Class have suffered and will continue to suffer damages, including monetary losses, uncompensated lost time, anxiety, and emotional distress. Plaintiff and the class have suffered or are at an increased risk of suffering:

    a.  The loss of the opportunity to control how their Sensitive Information is used;

    b.  The diminution in value of their Sensitive Information;

    c.  The compromise and continuing publication of their Sensitive Information;

    d.  Out-of-pocket costs associated with the prevention, detection, recovery, and remediation from identity theft or fraud;

    e.  Lost opportunity costs and lost wages associated with the time and effort expended addressing and attempting to mitigate the actual and future consequences of the Data Breach, including, but not limited to, efforts spent researching how to prevent, detect, contest, and recover from identity theft and fraud;

    f.  Delay in receipt of tax refund monies;

    g.  Unauthorized use of stolen Sensitive Information; and

    h.  The continued risk to their Sensitive Information, which remains in the possession of Defendant and is subject to further breaches so long as Defendant fails to undertake the appropriate measures to protect the Sensitive Information in its possession.

79.     Stolen Sensitive Information is one of the most valuable commodities on the

criminal information black market. According to Experian, a credit-monitoring service, stolen Sensitive Information can be worth up to $1,000.00 depending on the type of information obtained.

80.     The value of Plaintiff's and the proposed Class's Sensitive Information on the black market is considerable. Stolen Sensitive Information trades on the black market for years, and criminals frequently post stolen private information openly and directly on various "dark web" internet websites, making the information publicly available, for a substantial fee of course.

81.     Social Security numbers are particularly attractive targets for hackers because they can easily be used to perpetrate identity theft and other highly profitable types of fraud. Moreover, Social Security numbers are difficult to replace, as victims are unable to obtain a new number until the damage is done.

82.     It can take victims years to spot identity or Sensitive Information theft, giving criminals plenty of time to use that information for cash.

83.     One such example of criminals using Sensitive Information for profit is the development of "Fullz" packages.

84.     Cyber-criminals can cross-reference two sources of Sensitive Information to marry unregulated data available elsewhere to criminally stolen data with an astonishingly complete scope and degree of accuracy in order to assemble complete dossiers on individuals. These dossiers are known as "Fullz" packages.

85.     The development of "Fullz" packages means that stolen Sensitive Information from the Data Breach can easily be used to link and identify it to Plaintiff's and the Class's phone numbers, email addresses, and other unregulated sources and identifiers. In other words, even if certain information such as emails, phone numbers, or credit card numbers may not be included in the Sensitive Information stolen by the cyber-criminals in the Data Breach, criminals can easily

create a Fullz package and sell it at a higher price to unscrupulous operators and criminals (such as illegal and scam telemarketers) over and over. That is exactly what is happening to Plaintiff and the Class, and it is reasonable for any trier of fact, including this Court or a jury, to find that Plaintiff's and members of the Class's stolen Sensitive Information is being misused, and that such misuse is fairly traceable to the Data Breach.

86.    Defendant disclosed the Sensitive Information of Plaintiff and members of the proposed Class for criminals to use in the conduct of criminal activity. Specifically, Defendant opened up, disclosed, and exposed the Sensitive Information of Plaintiff and the Class to people engaged in disruptive and unlawful business practices and tactics, including online account hacking, unauthorized use of financial accounts, and fraudulent attempts to open unauthorized financial accounts (i.e., identity fraud), all using the stolen Sensitive Information.

87.    Defendant's failure to properly notify Plaintiff and the Class of the Data Breach exacerbated Plaintiff's and the Class's injuries by depriving them of the earliest ability to take appropriate measures to protect their Sensitive Information and take other necessary steps to mitigate the harm caused by the Data Breach.

***Defendant failed to adhere to FTC guidelines.***

88.    According to the Federal Trade Commission ("FTC"), the need for data security should be factored into all business decision-making.  To that end, the FTC has issued numerous guidelines identifying best data security practices that businesses, such as Defendant, should employ to protect against the unlawful exposure of Sensitive Information.

89.    In 2016, the FTC updated its publication, Protecting Personal Information: A Guide for Business, which established guidelines for fundamental data security principles and practices for business.  The guidelines explain that businesses should:

    a.   protect the personal customer information that they keep;

b.  properly dispose of personal information that is no longer needed;

c.  encrypt information stored on computer networks;

d.  understand their network's vulnerabilities; and

e.  implement policies to correct security problems.

90.    The guidelines also recommend that businesses watch for large amounts of data being transmitted from the system and have a response plan ready in the event of a breach.

91.    The FTC recommends that companies not maintain information longer than is needed for authorization of a transaction; limit access to sensitive data; require complex passwords to be used on networks; use industry-tested methods for security; monitor for suspicious activity on the network; and verify that third-party service providers have implemented reasonable security measures.

92.    The FTC has brought enforcement actions against businesses for failing to adequately and reasonably protect customer data, treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by Section 5 of the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

93.    Defendant's failure to employ reasonable and appropriate measures to protect against unauthorized access to employees' Sensitive Information constitutes an unfair act or practice prohibited by Section 5 of the FTCA, 15 U.S.C. § 45.

***Defendant Failed to Follow Industry Standards***

94.    Several best practices have been identified that—at a minimum—should be implemented by businesses like Defendant. These industry standards include: educating all

employees; strong passwords; multi-layer security, including firewalls, anti-virus, and anti-malware software; encryption (making data unreadable without a key); multi-factor authentication; backup data; and limiting which employees can access sensitive data.

95.    Other industry standard best practices include: installing appropriate malware detection software; monitoring and limiting the network ports; protecting web browsers and email management systems; setting up network systems such as firewalls, switches, and routers; monitoring and protection of physical security systems; protection against any possible communication system; and training staff regarding critical points.

96.    Upon information and belief, Defendant failed to implement industry-standard cybersecurity measures, including failing to meet the minimum standards of one or more of the NIST Cybersecurity Framework Version 2.0 (including without limitation PR.AA-01, PR.AA.-02, PR.AA-03, PR.AA-04, PR.AA-05, PR.AT-01, PR.DS-01, PR-DS-02, PR.DS-10, PR.PS-01, PR.PS-02, PR.PS-05, PR.IR-01, DE.CM-01, DE.CM-03, DE.CM-06, DE.CM-09, and RS.CO-04).

97.    These frameworks are applicable and accepted industry standards. And by failing to comply with these accepted standards, Defendant opened the door to the criminals—thereby causing the Data Breach.

**CLASS ACTION ALLEGATIONS**

98.    Plaintiff brings this class action under Fed. R. Civ. P. 23(a), 23(b)(2), and 23(b)(3), individually and on behalf of all members of the following class:

> All individuals residing in the United States whose Sensative Information was compromised in the Data Breach affecting Defendant in January 2025, including all those individuals who received notice of the Data Breach.

99.    Excluded from the Class are Defendant, its agents, affiliates, parents, subsidiaries,

any entity in which Defendant has a controlling interest, any Defendant officer or director, any successor or assign, and any Judge who adjudicates this case, including their staff and immediate family.

100.    Plaintiff reserves the right to amend the class definition.

101.    Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of his claims on class-wide bases using the same evidence as would be used to prove those elements in individual actions asserting the same claims.

102.    Ascertainability. All members of the proposed Class are readily ascertainable from information in Defendant's custody and control. After all, Defendant already identified some individuals and sent them data breach notices.

103.    Numerosity. The Class Members are so numerous that joinder of all Class Members is impracticable. Upon information and belief, the proposed Class includes at least 1,466 members.

104.    Typicality. Plaintiff's claims are typical of Class Members' claims as each arises from the same Data Breach, the same alleged violations by Defendant, and the same unreasonable manner of notifying individuals about the Data Breach.

105.    Adequacy. Plaintiff will fairly and adequately protect the proposed Class's common interests. His interests do not conflict with Class Members' interests. And Plaintiff has retained counsel—including lead counsel—that is experienced in complex class action litigation and data privacy to prosecute this action on the Class's behalf.

106.    Commonality and Predominance. Plaintiff's and the Class's claims raise predominantly common fact and legal questions—which predominate over any questions affecting individual Class Members—for which a class wide proceeding can answer for all Class Members. In fact, a class wide proceeding is necessary to answer the following questions:

a.  if Defendant had a duty to use reasonable care in safeguarding Plaintiff's and the Class's Sensitive Information;

b.  if Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach;

c.  if Defendant were negligent in maintaining, protecting, and securing Sensitive Information;

d.  if Defendant breached contract promises to safeguard Plaintiff and the Class's Sensitive Information;

e.  if Defendant took reasonable measures to determine the extent of the Data Breach after discovering it;

f.  if Defendant's Breach Notice was reasonable;

g.  if the Data Breach caused Plaintiff and the Class injuries;

h.  what the proper damages measure is; and

i.  if Plaintiff and the Class are entitled to damages, treble damages, and or injunctive relief.

107.  **Superiority.** A class action will provide substantial benefits and is superior to all other available means for the fair and efficient adjudication of this controversy.  The damages or other financial detriment suffered by individual Class Members are relatively small compared to the burden and expense that individual litigation against Defendant would require. Thus, it would be practically impossible for Class Members, on an individual basis, to obtain effective redress for their injuries. Not only would individualized litigation increase the delay and expense to all parties and the courts, but individualized litigation would also create the danger of inconsistent or

contradictory judgments arising from the same set of facts. By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, ensures economies of scale, provides comprehensive supervision by a single court, and presents no unusual management difficulties.

## FIRST CAUSE OF ACTION
### Negligence
### (On Behalf of Plaintiff and the Class)

108.    Plaintiff incorporates by reference all other paragraphs as if fully set forth herein.

109.    Plaintiff and the Class (and/or their third-party agents) entrusted their Sensitive Information to Defendant on the premise and with the understanding that Defendant would safeguard their Sensitive Information, use their Sensitive Information for business purposes only, and/or not disclose their Sensitive Information to unauthorized third parties.

110.    Defendant owed a duty of care to Plaintiff and Class Members because it was foreseeable that Defendant's failure—to use adequate data security in accordance with industry standards for data security—would compromise their Sensitive Information in a data breach. And here, that foreseeable danger came to pass.

111.    Defendant has full knowledge of the sensitivity of the Sensitive Information and the types of harm that Plaintiff and the Class could and would suffer if their Sensitive Information was wrongfully disclosed.

112.    Defendant owed these duties to Plaintiff and Class Members because they are members of a well-defined, foreseeable, and probable class of individuals whom Defendant knew or should have known would suffer injury-in-fact from Defendant's inadequate security practices. After all, Defendant actively sought and obtained Plaintiff and Class Members' Sensitive Information.

113.    Defendant owed—to Plaintiff and Class Members—at least the following duties to:

    a.    exercise reasonable care in handling and using the Sensitive Information in its care and custody;

    b.    implement industry-standard security procedures sufficient to reasonably protect the information from a data breach, theft, and unauthorized;

    c.    promptly detect attempts at unauthorized access;

    d.    notify Plaintiff and Class Members within a reasonable timeframe of any breach to the security of their Sensitive Information.

114.    Thus, Defendant owed a duty to timely and accurately disclose to Plaintiff and Class Members the scope, nature, and occurrence of the Data Breach. After all, this duty is required and necessary for Plaintiff and Class Members to take appropriate measures to protect their Sensitive Information, to be vigilant in the face of an increased risk of harm, and to take other necessary steps to mitigate the harm caused by the Data Breach.

115.    Defendant also had a duty to exercise appropriate clearinghouse practices to remove Sensitive Information it was no longer required to retain under applicable regulations.

116.    Defendant knew or reasonably should have known that the failure to exercise due care in the collecting, storing, and using of the Sensitive Information of Plaintiff and the Class involved an unreasonable risk of harm to Plaintiff and the Class, even if the harm occurred through the criminal acts of a third party.

117.    Defendant's duty to use reasonable security measures arose because of the special relationship that existed between Defendant and Plaintiff and the Class. That special relationship arose because Plaintiff and the Class entrusted Defendant with their confidential Sensitive Information, a necessary part of obtaining services from Defendant.

118.    The risk that unauthorized persons would attempt to gain access to the Sensitive Information and misuse it was foreseeable. Given that Defendant hold vast amounts of Sensitive Information, it was inevitable that unauthorized individuals would attempt to access Defendant's databases containing the Sensitive Information —whether by malware or otherwise.

119.    Sensitive Information is highly valuable, and Defendant knew, or should have known, the risk in obtaining, using, handling, emailing, and storing the Sensitive Information of Plaintiff and Class Members' and the importance of exercising reasonable care in handling it.

120.    Defendant improperly and inadequately safeguarded the Sensitive Information of Plaintiff and the Class in deviation of standard industry rules, regulations, and practices at the time of the Data Breach.

121.    Defendant breached these duties as evidenced by the Data Breach.

122.    Defendant acted with wanton and reckless disregard for the security and confidentiality of Plaintiff's and Class Members' Sensitive Information by:

123.    disclosing and providing access to this information to third parties and

124.    failing to properly supervise both the way the Sensitive Information was stored, used, and exchanged, and those in its employ who were responsible for making that happen.

125.    Defendant breached its duties by failing to exercise reasonable care in supervising its agents, contractors, vendors, and suppliers, and in handling and securing the personal information and Sensitive Information of Plaintiff and Class Members which actually and proximately caused the Data Breach and Plaintiff and Class Members' injury.

126.    Defendant further breached its duties by failing to provide reasonably timely notice of the Data Breach to Plaintiff and Class Members, which actually and proximately caused and exacerbated the harm from the Data Breach and Plaintiff and Class Members' injuries-in-fact.

127.    Defendant has admitted that the Sensitive Information of Plaintiff and the Class was wrongfully lost and disclosed to unauthorized third persons because of the Data Breach.

128.    As a direct and traceable result of Defendant's negligence and/or negligent supervision, Plaintiff and Class Members have suffered or will suffer damages, including monetary damages, increased risk of future harm, embarrassment, humiliation, frustration, and emotional distress.

129.    And, on information and belief, Plaintiff's Sensitive Information has already been published—or will be published imminently—by cybercriminals on the dark web.

130.    Defendant's breach of its common-law duties to exercise reasonable care and its failures and negligence actually and proximately caused Plaintiff and Class Members actual, tangible, injury-in-fact and damages, including, without limitation, the theft of their Sensitive Information by criminals, improper disclosure of their Sensitive Information, lost benefit of their bargain, lost value of their Sensitive Information, and uncompensated lost time and money incurred to mitigate and remediate the effects of the Data Breach that resulted from and were caused by Defendant's negligence, which injury-in-fact and damages are ongoing, imminent, immediate, and which they continue to face.

## SECOND CAUSE OF ACTION
### Negligence *per se*
### (On Behalf of Plaintiff and the Class)

131.    Plaintiff incorporates by reference all other paragraphs as if fully set forth herein.

132.    Under the FTC Act, 15 U.S.C. § 45, Defendant had a duty to use fair and adequate computer systems and data security practices to safeguard Plaintiff's and Class Members' Sensitive Information.

133.    Section 5 of the FTC Act prohibits "unfair . . . practices in or affecting commerce,"

including, as interpreted and enforced by the FTC, the unfair act or practice by businesses, such as Defendant, of failing to use reasonable measures to protect the Sensitive Information entrusted to it. The FTC publications and orders promulgated pursuant to the FTC Act also form part of the basis of Defendant's duty to protect Plaintiff and the Class Members' sensitive Sensitive Information.

134.    Defendant breached its respective duties to Plaintiff and Class Members under the FTC Act by failing to provide fair, reasonable, or adequate computer systems and data security practices to safeguard Sensitive Information.

135.    Defendant violated its duty under Section 5 of the FTC Act by failing to use reasonable measures to protect Sensitive Information and not complying with applicable industry standards as described in detail herein. Defendant's conduct was particularly unreasonable given the nature and amount of Sensitive Information Defendant had collected and stored and the foreseeable consequences of a data breach, including, specifically, the immense damages that would result to individuals in the event of a breach, which ultimately came to pass.

136.    The harm that has occurred is the type of harm the FTC Act is intended to guard against. Indeed, the FTC has pursued numerous enforcement actions against businesses that, because of their failure to employ reasonable data security measures and avoid unfair and deceptive practices, caused the same harm as that suffered by Plaintiff and members of the Class.

137.    But for Defendant's wrongful and negligent breach of its duties owed, Plaintiff and Class Members would not have been injured.

138.    The injury and harm suffered by Plaintiff and Class Members was the reasonably foreseeable result of Defendant's breach of their duties. Defendant knew or should have known that Defendant was failing to meet its duties and that its breach would cause Plaintiff and members

of the Class to suffer the foreseeable harms associated with the exposure of their Sensitive Information.

139.    Defendant's various violations and its failure to comply with applicable laws and regulations constitutes negligence per se.

140.    As a direct and proximate result of Defendant's negligence per se, Plaintiff and Class Members have suffered and will continue to suffer numerous injuries (as detailed *supra*).

**THIRD CAUSE OF ACTION**
**Breach of Implied Contract**
**(On Behalf of Plaintiff and the Class)**

141.    Defendant offered to employ Plaintiff and members of the Class if, as a condition of that employment, Plaintiff and members of the Class provided Defendant with their Sensitive Information.

142.    In turn, Defendant agreed it would not disclose the Sensitive Information it collects to unauthorized persons. Defendant also promised to safeguard employees' Sensitive Information.

143.    Plaintiff and the members of the Class accepted Defendant's offer by providing Sensitive Information to Defendant in exchange for employment with Defendant.

144.    Implicit in the parties' agreement was that Defendant would provide Plaintiff and members of the Class with prompt and adequate notice of all unauthorized access and/or theft of their Sensitive Information.

145.    Plaintiff and the members of the Class would not have entrusted their Sensitive Information to Defendant in the absence of such an agreement with Defendant.

146.    Defendant materially breached the contracts it had entered with Plaintiff and members of the Class by failing to safeguard such information and failing to notify them promptly of the intrusion into its computer systems that compromised such information. Defendant also

breached the implied contracts with Plaintiff and members of the Class by:

      a.  Failing to properly safeguard and protect Plaintiff's and members of the Class's Sensitive Information;

      b.  Failing to comply with industry standards as well as legal obligations that are necessarily incorporated into the parties' agreement; and

      c.  Failing to ensure the confidentiality and integrity of electronic Sensitive Information that Defendant created, received, maintained, and transmitted.

147.    The damages sustained by Plaintiff and members of the Class as described above were the direct and proximate result of Defendant's material breaches of its agreement(s).

148.    Plaintiff and members of the Class have performed under the relevant agreements, or such performance was waived by the conduct of Defendant.

149.    The covenant of good faith and fair dealing is an element of every contract. All such contracts impose upon each party a duty of good faith and fair dealing. The parties must act with honesty in fact in the conduct or transactions concerned. Good faith and fair dealing, in connection with executing contracts and discharging performance and other duties according to their terms, means preserving the spirit—not merely the letter—of the bargain. Put differently, the parties to a contract are mutually obligated to comply with the substance of their contract in addition to its form.

150.    Subterfuge and evasion violate the obligation of good faith in performance even when an actor believes its conduct to be justified. Bad faith may be overt or may consist of inaction, and fair dealing may require more than honesty.

151.    Defendant failed to advise Plaintiff and members of the Class of the Data Breach promptly and sufficiently.

152.    In these and other ways, Defendant violated its duty of good faith and fair dealing.

153.    Plaintiff and members of the Class have sustained damages because of Defendant's breaches of its agreement, including breaches of it through violations of the covenant of good faith and fair dealing.

154.    Plaintiff, on behalf of himself and the Class, seeks compensatory damages for breach of implied contract, which includes the costs of future monitoring of their credit history for identity theft and fraud, plus prejudgment interest, and costs.

**FOURTH CAUSE OF ACTION**
**Invasion of Privacy**
**(On Behalf of Plaintiff and the Class)**

155.    Plaintiff incorporates by reference all other paragraphs as if fully set forth herein.

156.    Plaintiff and the Class had a legitimate expectation of privacy regarding their highly private and confidential Sensitive Information and were accordingly entitled to the protection of this information against disclosure to unauthorized third parties.

157.    Defendant owed a duty to its current and former employees, including Plaintiff and the Class, to keep this information confidential.

158.    The unauthorized acquisition (*i.e.*, theft) by a third party of Plaintiff and Class Members' Sensitive Information is highly offensive to a reasonable person.

159.    The intrusion was into a place or thing which was private and entitled to be private. Plaintiff and the Class disclosed their sensitive and confidential information to Defendant, but did so privately, with the intention that their information would be kept confidential and protected from unauthorized disclosure. Plaintiff and the Class were reasonable in their belief that such information would be kept private and would not be disclosed without their authorization.

160.    The Data Breach constitutes an intentional interference with Plaintiff's and the

29

Class's interest in solitude or seclusion, either as to their person or as to their private affairs or concerns, of a kind that would be highly offensive to a reasonable person.

161.    Defendant acted with a knowing state of mind when it permitted the Data Breach because it knew its information security practices were inadequate.

162.    Defendant acted with a knowing state of mind when it failed to notify Plaintiff and the Class in a timely fashion about the Data Breach, thereby materially impairing their mitigation efforts.

163.    Acting with knowledge, Defendant had notice and knew that its inadequate cybersecurity practices would cause injury to Plaintiff and the Class.

164.    As a proximate result of Defendant's acts and omissions, the private and sensitive Sensitive Information of Plaintiff and the Class were stolen by a third party and is now available for disclosure and redisclosure without authorization, causing Plaintiff and the Class to suffer damages (as detailed *supra*).

165.    And, on information and belief, Plaintiff's Sensitive Information has already been published—or will be published imminently—by cybercriminals on the Dark Web.

166.    Unless and until enjoined and restrained by order of this Court, Defendant's wrongful conduct will continue to cause great and irreparable injury to Plaintiff and the Class since their Sensitive Information are still maintained by Defendant with their inadequate cybersecurity system and policies.

167.    Plaintiff and the Class have no adequate remedy at law for the injuries relating to Defendant's continued possession of their sensitive and confidential records. A judgment for monetary damages will not end Defendant's inability to safeguard the Sensitive Information of Plaintiff and the Class.

168.    In addition to injunctive relief, Plaintiff, on behalf of herself and the other Class Members, also seeks compensatory damages for Defendant's invasion of privacy, which includes the value of the privacy interest invaded by Defendant, the costs of future monitoring of their credit history for identity theft and fraud, plus prejudgment interest and costs.

### FIFTH CAUSE OF ACTION
**Unjust Enrichment**
**(On Behalf of Plaintiff and the Class)**

169.    Plaintiff incorporates by reference all other paragraphs as if fully set forth herein.

170.    This claim is pleaded in the alternative to the breach of implied contract claim.

171.    Plaintiff and Class Members conferred a benefit upon Defendant. After all, Defendant benefitted in the form of services through employment. Defendant also benefited from the receipt of Plaintiff's and the Class's Sensitive Information, as this was used to facilitate their employment.

172.    Defendant appreciated or had knowledge of the benefits it received from Plaintiff and Class Members.

173.    Plaintiff and Class Members reasonably understood that Defendant would use adequate cybersecurity measures to protect the Sensitive Information that they were required to provide based on Defendant's duties under state and federal law and its internal policies.

174.    Defendant enriched itself by saving the costs they reasonably should have expended on data security measures to secure Plaintiff's and Class Members' Sensitive Information.

175.    Instead of providing a reasonable level of security, or retention policies, that would have prevented the Data Breach, Defendant instead calculated to avoid its data security obligations at the expense of Plaintiff and Class Members by utilizing cheaper, ineffective security measures. Plaintiff and Class Members, on the other hand, suffered as a direct and proximate result of

Defendant's failure to provide the requisite security.

176.     Under principles of equity and good conscience, Defendant should not be permitted to retain the full value of Plaintiff's and Class Members' (1) Sensitive Information and (2) employment because Defendant failed to adequately protect their Sensitive Information.

177.     Plaintiff and Class Members have no adequate remedy at law.

178.     Defendant should be compelled to disgorge into a common fund—for the benefit of Plaintiff and Class Members—all unlawful or inequitable proceeds that it received because of its misconduct.

## PRAYER FOR RELIEF

Plaintiff and Class Members respectfully request judgment against Defendant and that the Court enter an order:

A.     Certifying this case as a class action on behalf of Plaintiff and the proposed Class, appointing Plaintiff as class representative, and appointing his counsel to represent the Class;

B.     Awarding declaratory and other equitable relief as necessary to protect the interests of Plaintiff and the Class;

C.     Awarding injunctive relief as necessary to protect the interests of Plaintiff and the Class;

D.     Awarding Plaintiff and the Class damages including applicable compensatory, exemplary, punitive damages, and statutory damages, as allowed by law;

E.     Awarding restitution and damages to Plaintiff and the Class in an amount to be determined at trial;

F.     Awarding attorneys' fees and costs, as allowed by law;

G.    Awarding prejudgment and post-judgment interest, as provided by law;

H.    Granting Plaintiff and the Class leave to amend this complaint to conform to the

evidence produced at trial; and

I.    Granting other relief that this Court finds appropriate.

## JURY DEMAND

Plaintiff hereby demands that this matter be tried before a jury.

Dated:  April 23, 2025                     Respectfully submitted,


                                          */s/ Joe Kendall*
                                          JOE KENDALL
                                          Texas Bar No. 11260700
                                          **KENDALL LAW GROUP, PLLC**
                                          3811 Turtle Creek Blvd., Suite 825
                                          Dallas, Texas 75219
                                          Telephone:  214/744-3000 / 214/744-3015 (fax)
                                          jkendall@kendalllawgroup.com

                                          Samuel J. Strauss*
                                          Raina C. Borrelli*
                                          **STRAUSS BORRELLI PLLC**
                                          980 N. Michigan Avenue, Suite 1610
                                          Chicago, Illinois 60611
                                          T: (872) 263-1100
                                          F: (872) 263-1109
                                          sam@straussborrelli.com
                                          raina@straussborrelli.com

                                          *Pro hac vice forthcoming*

                                          **Attorneys for Plaintiff and the Proposed Class**